**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **CORNELIA SMITH**, <br> 15109 Hartford Tr. <br> Strongsville, OH 44136 <br><br>             Plaintiff, <br><br>     v. <br><br> **SERVBANK, SB**, <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Ste. 125 <br> Columbus, OH 43219 <br><br>     -and- <br><br> **THE MONEY SOURCE (NY), INC.**, <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Ste. 125 <br> Columbus, OH 43219 <br><br>     -and- <br><br> **CALIBER HOME LOANS, INC.**, <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Ste. 125 <br> Columbus, OH 43219 <br><br>           Defendants. | Case No. <br><br> Judge <br><br><br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Cornelia Smith ("Smith" or "Plaintiff"), through counsel, for her *Complaint for Damages* against Defendants Servbank, SB ("Servbank"), The Money Source (NY), Inc. ("TMS"), and Caliber Home Loans, Inc. ("Caliber") (collectively, "Defendants"), states as follows:

1.      Smith is the owner of residential real property, located at and commonly known as 15109 Hartford Tr., Strongsville, Ohio 44136 (the "Home").

2.      Smith currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3.      On or about June 20, 2019, Smith and her ex-husband Roderick L. Brown ("Brown") executed a promissory note (the "Note") as well as a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

4.      Servbank is a foreign corporation organized under the laws of the State of Illinois, with its principal place of business located in Oswego, Illinois.

5.      Servbank is the current subservicer of the Loan.

6.      TMS is a foreign corporation organized under the laws of the State of New York, with its principal place of business located in Phoenix, AZ.

7.      TMS is the current master servicer of the Loan.

8.      According to TMS, all loans purchased by TMS are subserviced by Servbank.

9.      Caliber is a foreign corporation organized under the laws of the State of Delaware, with its principal place of business located in Coppell, TX.

10.     Caliber was the servicer of the Loan until servicing of the Loan was transferred to TMS and Servbank effective March 3, 2023.

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA).

12.     This Court has supplemental jurisdiction to hear any state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

13.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

14.     This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

15.     Smith asserts claims for relief against Defendants for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

16.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

17.     Defendants are each a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

18.     RESPA allows for vicarious liability and TMS is responsible for the actions of its subservicer, Servbank. *See Bennett v. F.S.B.*, No. 2:23-cv-00155-DCN, 2023 U.S. Dist. LEXIS 148684 (D. Idaho Aug. 21, 2023); *Feldmann v. Lakeview Loan Servicing LLC*, No. C20-580 MJP, 2021 U.S. Dist. LEXIS 80336, at *13-14 (W.D. Wash. Apr. 27, 2021); *Rouleau v. US Bank, N.A.*, No. 14-CV-568-JL, 2015 U.S. Dist. LEXIS 50969, at *20 (D.N.H. Apr. 17, 2015).

19.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; see 12 C.F.R. § 1026.33(a) (Regulation Z).

20.     The Loan is secured by the Home which is Smith's principal residence. 12 C.F.R. § 1024.30(c)(2).

21.     Defendants are each subject to the requirements of RESPA and Regulation X, and they do not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

22.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

23.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

24.     Smith has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

25.     Smith also asserts statutory claims against TMS and Caliber for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## FACTUAL BACKGROUND

### *Issues with Defendants' Servicing of the Loan*

26.     On or about April 26, 2022, Caliber sent correspondence to Smith approving her for a Trial Period Plan for a VA Disaster Modification (the "TPP").

27.     Pursuant to the terms of the TPP, Smith was to remit payments of $1,689.49 in and for the months of June 2022 through August 2022.

28.     Smith timely accepted the TPP and made all necessary payments thereunder.

29.     On or about August 23, 2022, Caliber sent a permanent modification to Smith (the "Modification") which required the signatures of Smith and Brown.

30.     The Modification had an effective date of September 1, 2022.

31.     On or around September 2, 2022, Smith spoke with representatives of Caliber for instructions, identified as "Tan" and "Debra", and was told that Caliber was able to locate the divorce decree and quit-claim deed in its system and to sign the Modification only with Smith's signature.

32.     Relying on these instructions, Smith executed the Modification on September 2, 2022 and returned the same to Caliber.

33.     Caliber sent a new set of Modification documents in October 2022 which Smith again executed on or about October 13 and sent back to Caliber via UPS.

34.     Smith remitted or attempted to remit payments in and for the months of October 2022 thereafter in accordance with the terms of the same.

35.     On or about October 27, 2022, Smith spoke with a representative of Caliber, identified as "Samantha" and as a supervisor. Samantha advised the Borrower that Brown would also need to sign the Modification per VA guidelines.

36.     Accordingly, on November 3, 2022, both Smith and Brown executed the Modification and returned it to Caliber via UPS.

37.     Caliber received the Modification executed by Smith and Brown, as required, on or before November 7, 2022.

38.     On or about November 16, 2022, Smith spoke with a representative of Caliber, identified as "Miguel", to check on the status of the Modification. Miguel claimed that Caliber did not receive the Modification, but, after Smith provided the tracking information for the Modification, advised that she would receive a call back about the same.

39.     On or about December 8, 2022, Smith spoke with a representative of Caliber, identified as "Tanesha", who advised that the Modification had not been processed yet and to wait for two weeks.

40.     During each of the aforementioned calls, Smith was informed that she could not and/or should not remit a mortgage payment towards the Modification until it was finalized despite her attempts to do so during these calls.

41.     On or about January 3, 2023, Smith spoke with a representative of Caliber, identified as "Janet", to check in on the status of the Modification. Janet informed Smith that she needed to remit all of the payments due and owing on the Modification to finalize the same and accepted a payment of $1,699.88 over the phone.

42.     Janet advised that Smith received "bad information" from the prior Caliber representatives and should have been making further payments despite Caliber's refusal to accept the same.

43.     Smith stated that she would be able to make extra payments in the next two months to account for the allegedly past due November 2022 and December 2022 payments due on the Modification.

44.     Instead of boarding the Modification, Caliber sent correspondence dated January 6, 2023 falsely stating that the Modification was denied due to Smith's alleged failure to accept the same. A copy of the January 6, 2023 correspondence is attached as **Exhibit 1**.

45.     The January 6, 2023 correspondence informed Smith that she had "thirty (30) calendar days from the date of this notice to contact Caliber to discuss the reason for non-approval or to discuss alternative loss mitigation options that may be available to you." *See* Exhibit 1.

46.     Less than thirty (30) calendar days later, on January 24, 2023, Caliber filed foreclosure proceedings against Smith in the Court of Common Pleas for Cuyahoga County, Ohio, Case No. CV-23-974228 (the "Foreclosure Case").

47.     The Modification was not boarded and Smith was caused to incur legal fees, costs, and expenses to defend the Foreclosure Case.

48.     TMS and Servbank obtained servicing rights to the Loan in March 2023.

49.     TMS and Servbank continued in the footsteps of Caliber and failed to promptly board the Modification and continued to prosecute the Foreclosure Case.

50.     Smith continued to remit payments under and consistent with the terms of the Modification including a significant lump sum payment to bring the payments under the Modification fully current in or around September 2023.

51.     The Modification was eventually boarded and was recorded as of September 29, 2023.

52.     Pursuant the limited transaction history provided for the Loan, it appears that a significant number of payments, including those payments remitted by and through a lump sum on or about October 19, 2023 were applied in accordance with the terms of the Loan prior to the Modification, rather than the terms as modified through the Modification. As the original interest rate of the Loan was 4.625% and the modified interest rate is 3.500%, this misapplication would result in the payment of greater interest than would otherwise be warranted.

53.     Despite the Modification being boarded and recorded in September 2023, and despite the default that served as the basis for the Foreclosure Case being rectified, Defendants took no action to dismiss their claims of foreclosure in the Foreclosure Case until roughly six (6) months later in March 2024.

54.     Following the dismissal of the Foreclosure Case, TMS and Servbank imposed fees, charges, and amounts otherwise against the Loan related to default servicing, including the imposition of fees and/or costs of attorneys' fees of $330.00 related to the Foreclosure Case and have attempted to collect the same from Smith.

55.     Since the Foreclosure Case was only filed and maintained due to the erroneous conduct of Defendants, there was no rational basis for any such fees to have been imposed against the Loan.

***Attempts to Have Defendants Correct Errors Relating to the Servicing of the Loan***

56.     In May 2024, Smith engaged counsel for representation to request information relating to the Loan and to investigate Defendants' errors in the servicing of the Loan.

57.     For all times relevant, Servbank has designated the following address for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

> Servbank
> 3138 E Elwood St
> Phoenix, AZ 85034
> Attn: Qualified Written Requests

A true and correct copy of Servbank's Contact Us webpage (https://servbank.com/contact-us) as it existed on May 29, 2024 is attached as **Exhibit 2** and a true and correct copy of the same webpage as it exists as of May 7, 2025 is attached as **Exhibit 3**.

58.     On May 31, 2024, Smith, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to Servbank at the Designated Address:

> a.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)"

seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

b.       Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

Copies of RFI #1 and RFI #2 and tracking information evidencing delivery of RFI #1 and RFI #2 are attached as **Exhibit 4** and **Exhibit 5**, respectively.

59.      Servbank received RFI #1 and RFI #2 at the Designated Address on June 3, 2024. *See* Exhibit 4 and Exhibit 5.

60.      On or about June 10, 2024, Servbank set correspondence acknowledging receipt of RFI #1 and RFI #2 (the "Acknowledgment"). The correspondence confirmed that Servbank's designated address for receipt of requests for information and notices of error is:

Servbank
3138 East Elwood Street
Phoenix, AZ 85034

A copy of the Acknowledgment is attached as **Exhibit 6**.

61.      Servbank failed to respond to RFI #2's requests for information concerning the Loan within thirty (30) business days of receipt, or by July 17, 2024.

62.      On or about August 13, 2024, Smith, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 and request for information pursuant to 12 C.F.R. 1024.36 ("NOE #1") to Servbank at the Designated Address. A copy of NOE #1, without enclosures, and tracking information evidencing delivery of the NOE #1 is attached as **Exhibit 7**.

63.     Through NOE #1, Smith asserted that Servbank committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to timely respond to RFI #2 and made a renewed request for the information requested through RFI #2. *See* Exhibit 7.

64.     Servbank received NOE #1 at the Designated Address on August 19, 2024. *See* Exhibit 7.

65.     On or about September 30, 2024, Servbank sent correspondence in response to NOE #1 to Smith ("Response #1"). A copy of Response #1 is attached as **Exhibit 8**.

66.     Response #1 failed to provide Smith with a copy of any servicing notes related to Servbank's servicing of the Loan since Servbank obtained servicing rights to the Loan. *See* Exhibit 8.

67.     Response #1 states that TMS and Servbank are attempting to collect an improper $330.00 for attorneys' fees and costs associated with the Foreclosure Case. *See* Exhibit 8.

68.     On or about January 29, 2025, Smith, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 and a request for information pursuant to 12 C.F.R. 1024.36 ("NOE #2") to Servbank at the Designated Address. A copy of NOE #2, without enclosures, and tracking information evidencing delivery of the NOE #2 is attached as **Exhibit 9**.

69.     Through NOE #2, Smith asserted that Servbank committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to RFI #2 and NOE #1 and made a renewed request for the information requested through RFI #2 and NOE #1. *See* Exhibit 9.

70.     NOE #2 also asserted that Servbank committed multiple covered errors pursuant to 12 C.F.R. §§ 1024.35(b)(3), (5), and (11) for failing to properly apply payments towards the Loan, imposing fees and charges for which there was no reasonable basis to impose, and failing to promptly dismiss the Foreclosure Case, as discussed in detail, *supra*. *See* Exhibit 9.

71. Servbank received NOE #2 at the Designated Address on February 3, 2025. *See* Exhibit 9.

72. On or about March 13, 2025, Servbank sent correspondence in response to NOE #2 to Smith ("Response #2"). A copy of Response #2 is attached as **Exhibit 10**.

73. In Response #2, Servbank falsely states that RFI #1 and RFI #2 were not sent to the "correct QWR address." *See* Exhibit 10.

74. Servbank has maintained the Designated Address of 3138 East Elwood Street, Phoenix, AZ 85034 for all times relevant to this Complaint and RFI #1 and RFI #2 were clearly sent to that address. *See* Exhibit 2, Exhibit 3, Exhibit 4, and Exhibit 5.

75. Servbank's erroneous claim that Response #1, dated September 30, 2024, was timely is unsupported, because thirty (30) business days from the date of receipt of RFI #2, June 3, 2024, is July 7, 2024.

76. Addressing the maintenance of the Foreclosure Case, Servbank states that "Foreclosure was close billed on October 26, 2023. The VA Modification process closed on October 30, 2023. Judgment had not been entered at that time, so there was nothing to dismiss." *See* Exhibit 10.

77. Response #2 again confirms that TMS and Servbank are continuing to attempt to collect an improper $330.00 for attorneys' fees and costs associated with the Foreclosure Case. *See* Exhibit 10.

## **IMPACT AND DAMAGES**

78. Defendants' improper actions caused Smith to suffer from actual and proximate damages including, but not limited to:

a.  Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Smith is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled;

b.  Harm to Smith's credit and a delay in the rehabilitation of her credit which would have been avoided had Defendants acted appropriately in relation to the loss mitigation and error resolution processes for the Loan;

c.  Loss of time and money for dealing with requests for loss mitigation documentation, which would not have been necessary but for Defendants' wrongful conduct;

d.  Legal fees, costs, and expenses to submit each notice of error and request for information, described, *supra*, in a good faith attempt to amicably resolve this matter or to have Defendants mitigate the harm caused to Smith to which she did not receive proper or adequate responses;

e.  Legal fees, costs, and expenses incurred to take reasonable steps to defend the Foreclosure Case; and,

f.  Severe emotional distress driven by Defendants' wrongful conduct related to their failure to properly implement the Modification, assessing improper fees to the Loan, filing and maintaining the Foreclosure Case, failing to properly and timely respond to Smith's requests for information and notices of error, and by justified fear that the ensuing delinquency would result in an eventual foreclosure sale of her Home, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF TMS AND SERVBANK'S
## VIOLATIONS OF RESPA AND REGULATION X

79.     The actions of TMS and Servbank are part of a pattern and practice of behavior in violation of Smith's rights and in abdication and contravention of their obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

80.     TMS and Servbank have numerous consumer complaints lodged against them nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

81.     Smith has reviewed the CFPB's consumer complaint database and has identified narratives asserting that TMS and Servbank engaged in similar conduct against other borrowers. In particular, Smith has reviewed ten (10) consumer complaints attached hereto and identified as **Group Exhibit 11**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that TMS and Servbank have engaged in a pattern or practice of violating RESPA with respect to other borrowers.

82.     Additionally, TMS[1] has seventy-five (75) and Servbank[2] has eighty-four (84) complaints lodged against them with the Better Business Bureau (BBB) within the past three (3) years.

---

[1]        https://www.bbb.org/us/az/phoenix/profile/mortgage-banker/the-money-source-1126-172016751 (last visited May 15, 2025).
[2] https://www.bbb.org/us/az/phoenix/profile/bank/servbank-1126-1000110791 (last visited May 15, 2025).

## COUNT ONE: AGAINST CALIBER
## VIOLATIONS OF 12 C.F.R. § 1024.41(f)(2) AND 12 U.S.C. § 2605(k)

83.     Smith restates and incorporates all of the allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein.

84.     12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

85.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

86.     A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

> (i)     A borrower's mortgage loan obligation is more than 120 days delinquent;
>
> (ii)    The foreclosure is based on a borrower's violation of a due-on-sale clause; or
>
> (iii)   The servicer is joining the foreclosure action of a superior or subordinate lienholder.

12 C.F.R. § 1024.41(f)(1).

87.     If a borrower submits a complete loss mitigation application … before a servicer has made the first notice or filing required by applicable law for any judicial … foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial … foreclosure process unless:

> (i)     The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the

borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(ii)     The borrower rejects all loss mitigation options offered by the servicer; or

(iii)    The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(f)(2)

88.     12 C.F.R. § 1024.41(c)(1) provides:

[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

[….]

(ii)     Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

89.     At the time the Foreclosure Case was filed, Smith should have been less than 120 days delinquent on her obligations under the Loan, had Caliber properly implemented the Modification.

90.     The January 6, 2023 correspondence is not a valid notice pursuant to 12 C.F.R. § 1024.41(c)(1)(ii) because Caliber instructed Smith to "contact Caliber to discuss alternative loss mitigation options that may be available to you," instead of stating Caliber's determination of which loss mitigation options it would offer to Smith. *See* <u>Exhibit 1</u>.

91.     Further, the January 6, 2023 correspondence fails to state that Smith is not eligible for any loss mitigation options and the time for an appeal, or thirty (30) calendar days from the date of the letter as instructed by Caliber, had not run by January 24, 2023. *See* Exhibit 1.

92.     Smith has not rejected any loss mitigation option or failed to perform under any agreement on a loss mitigation option, and, to the contrary, had been attempting to have Caliber properly implement the Modification.

93.     The Foreclosure Case was not based on any violation of a due-on-sale clause nor did Caliber join the foreclosure action of a superior or subordinate lienholder.

94.     Caliber's actions in filing the Foreclosure Case on January 23, 2024, were in violation of 12 C.F.R. § 1024.41(f) and 12 U.S.C. § 2605(k)(1)(E) and, as a result, Smith has suffered actual damages, including, but not limited to, legal fees and costs for securing foreclosure counsel to defend against the Foreclosure Case, legal fees and costs associated with sending requests for information and notices of error, and fees and costs imposed against the Loan related to the filing of the Foreclosure Case.

95.     As a result of Caliber's actions, Caliber is liable to Smith for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

96.     Additionally, Smith requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: AGAINST SERVBANK AND TMS
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)

97.     Smith restates and incorporates all of the allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein.

98.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information

that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

99.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

100.    A servicer must respond to a notice of error by either:

    (A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

101.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

    (A)    Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

    (B)    Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

      (C)     For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

102.    NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Smith that includes her name, mortgage loan account number, and property address and asserts errors that she believed to have occurred. *See* <u>Exhibit 9</u>.

103.    On or about January 29, 2025, Smith, through counsel, NOE #2 to Servbank at the Designated Address. *See* <u>Exhibit 9</u>.

104.    Through NOE #2, Smith asserted that Servbank committed multiple covered errors pursuant to 12 C.F.R. §§ 1024.35(b)(3), (5), and (11) for failing to properly apply payments towards the Loan, imposing fees and charges for which there was no reasonable basis to impose, and failing to promptly dismiss the Foreclosure Case. *See* <u>Exhibit 9</u>.

105.    NOE #2 also asserted the errors concerning the implementation of the Modification, as discussed in detail, *supra*, and requested audio recordings, summaries, or notes relating to telephone calls between Smith and Caliber on five dates. *See* <u>Exhibit 9</u>.

106.    Servbank received NOE #2 at the Designated Address on February 3, 2025. *See* <u>Exhibit 9</u>.

107.    On or about March 13, 2025, Servbank sent Response #2 to Smith. *See* <u>Exhibit 10</u>.

108.    Addressing the maintenance of the Foreclosure Case, Servbank states that "Foreclosure was close billed on October 26, 2023. The VA Modification process closed on October 30, 2023. Judgment had not been entered at that time, so there was nothing to dismiss." *See* <u>Exhibit 10</u>.

109. Servbank's contention that "there was nothing to dismiss" ignores the fact that foreclosure counsel filed a dismissal of the Foreclosure Case on March 14, 2024.

110. Response #2 again confirms that TMS and Servbank are continuing to attempt to collect an improper $330.00 for attorneys' fees and costs associated with the Foreclosure Case. *See* Exhibit 10.

111. Servbank did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Servbank did not correct all of the errors as identified in NOE #2.

112. Servbank did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as Servbank's refusal to acknowledge its role in failing to properly apply Smith's monthly payments pursuant to the terms of the Modification and promptly dismiss the Foreclosure Case after having recorded the Modification, while continuing to attempt to collect $330.00 for attorneys' fees and costs associated with the Foreclosure Case, indicates that Servbank failed to perform a reasonable investigation into the errors alleged through NOE #2.

113. Servbank's actions constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)(1)(C) and (E) and has caused Smith's attorneys' fees and costs associated with the preparation of NOE #2 to metamorphose into damages. *Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); s*ee Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

114. TMS, as the master servicer of the Loan, is responsible for Servbank's actions as subservicer.

115. TMS and Servbank's actions are part of a pattern and practice of behavior in conscious disregard for Smith's rights and in abdication of their obligations under RESPA and Regulation X.

116.    As a result of TMS and Servbank's actions, TMS and Servbank are liable to Smith for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

117.    Additionally, Smith requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE: AGAINST CALIBER AND TMS
### VIOLATIONS OF THE RMLA, R.C. 1322, *et seq.*

118.    Smith restates and incorporates all of the allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein.

119.    Caliber and TMS are subject to the requirements of the RMLA and do not qualify for the exemptions listed in R.C. 1322.04.

120.    "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

121.    Caliber is a mortgage servicer under the RMLA as it held "the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

122.    Caliber, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

123.    Caliber is a registrant under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued Shellpoint registration certificates, License No. RM.850184.000. R.C. 1322.01(HH).

124.    TMS is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

125.    TMS, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

126.    TMS is a registrant under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued Shellpoint registration certificates, License No. RM.850109.000. R.C. 1322.01(HH).

127.    Smith is a "buyer" as defined by R.C. 1322.01(I), as she is an individual whose mortgage loan was and is serviced by mortgage servicers, Caliber and TMS.

### (R.C. 1322.40)

128.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations. R.C. 1322.40(B).

129.    Caliber violated R.C. 1322.40(B) by making false or misleading statements of a material fact, including stating that Brown was not required to sign the Modification, claiming to not have received paperwork relating to the Modification, instructing Smith to not make monthly payments pursuant to the terms of the Modification, and stating that Smith did not accept the Modification.

130.    Caliber violated R.C. 1322.40(B) by making false promises regarding a material fact, including promising to implement the Modification.

131.    Caliber violated R.C. 1322.40(B) by engaging in a continued course of misrepresentations relating to the implementation of the Modification and its acceptance of Smith's payments made pursuant to the terms of the Modification.

132.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

133.    Caliber violated R.C. 1322.40(C) by failing to properly implement the Modification, failing to accept Smith's payments made pursuant to the terms of the Modification, and filing the Foreclosure Case while engaging in conduct that constitutes prohibited dual tracking.

134.    TMS violated R.C. 1322.40(C) by failing to properly implement the Modification after Caliber transferred servicing to TMS and Servbank, maintaining the improper Foreclosure Case, failing to accept Smith's payments made pursuant to the terms of the Modification, and collecting and attempting to collect attorneys' fees and costs associated with the improper Foreclosure Case.

135.    As a result of Defendants' conduct, Defendants are liable to Smith for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

**(R.C. 1322.45)**

136.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: (2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care, and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or

course of business in connection with the brokering or originating of any residential mortgage loan[.] R.C. 1322.45(A).

137.   A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

138.   Caliber's violations of RESPA and Regulation X constitute violations of R.C. 1322.45(A).

139.   Caliber violated R.C. 1322.45(A)(2) by failing to follow Smith's reasonable request to implement the Modification and accept Smith's payments made pursuant to the terms of the Modification.

140.   Caliber violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing by failing to properly implement the Modification, failing to accept Smith's payments made pursuant to the terms of the Modification, and filing the Foreclosure Case while engaging in conduct that constitutes prohibited dual tracking.

141.   TMS's violations of RESPA and Regulation X constitute violations of R.C. 1322.45(A).

142.   TMS violated R.C. 1322.45(A)(3) and (4) by failing to properly implement the Modification after Caliber transferred servicing to TMS and Servbank, maintaining the improper Foreclosure Case, failing to accept Smith's payments made pursuant to the terms of the Modification, and collecting and attempting to collect attorneys' fees and costs associated with the improper Foreclosure Case.

143.   As a result of Defendants' conduct, Defendants are liable to Smith for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Cornelia Smith respectfully requests that this Court enter an Order granting Judgment against Defendant Servbank, SB as follows:

.       Actual damages in an amount to be determined at trial for the allegations contained in Count Two;

A.      Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA as contained in Count Two;

B.      Costs and reasonable attorneys' fees as to Count Two; and,

C.      Such other relief which this Court may deem appropriate.

**WHEREFORE** Plaintiff Cornelia Smith respectfully requests that this Court enter an Order granting Judgment against Defendant The Money Source (NY), Inc. as follows:

.       Actual damages in an amount to be determined at trial for the allegations contained in Counts Two and Three;

A.      Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA as contained in Count Two;

B.      Punitive damages to the extent allowed by law for the allegations contained in Count Three;

C.      Costs and reasonable attorneys' fees as to Counts Two and Three; and,

D.      Such other relief which this Court may deem appropriate.

**WHEREFORE** Plaintiff Cornelia Smith respectfully requests that this Court enter an Order granting Judgment against Defendant Caliber Home Loans, Inc. as follows:

A.      Actual damages in an amount to be determined at trial for the allegations contained in Counts One and Three;

B.      Punitive damages to the extent allowed by law for the allegations contained in

Count Three;

C.      Costs and reasonable attorneys' fees as to Counts One and Three; and,

D.      Such other relief which this Court may deem appropriate.

## **JURY DEMAND**

Plaintiff Cornelia Smith respectfully demands a trial by jury on all such claims that may be

so tried.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Cornelia Smith*